### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MOO & OINK, INC., | ) | Case No. 11-34616 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |
| | ) | **Hearing Date: October 18, 2011** |
| | ) | **Hearing Time: 10:30 a.m.** |

### NOTICE OF MOTION TO LIFT THE AUTOMATIC STAY TO CONDUCT PUBLIC SALE OF COLLATERAL SECURING BANK'S LOANS AND RELATED RELIEF

**PLEASE TAKE NOTICE** that on **Tuesday, October 18, 2011 at 10:30 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Jack B. Schmetterer, United States Bankruptcy Judge, in Courtroom 682 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or in his absence, before such other Judge who may be sitting in his place and stead and hearing bankruptcy motions, and shall then and there present the **Motion to Lift the Automatic Stay to Conduct Public Sale of Collateral Securing Bank's Loans and Related Relief,** a copy of which is served herewith, and shall pray for the entry of an order in conformity with said motion.

Dated: October 13, 2011

Respectfully submitted,

FIRST MIDWEST BANCORP, INC.

/s/ Courtney E. Barr
One of its Attorneys

Courtney E. Barr (ARDC #6277432)
Brian A. Raynor (ARDC #6300638)
Locke Lord LLP
111 South Wacker Drive
Chicago IL 60606
Phone: (312) 443-0653
Fax: (312) 443-6653
cbarr@lockelord.com

## CERTIFICATE OF SERVICE

      Courtney E. Barr, an attorney, hereby certifies that on October 13, 2011, she caused a true and correct copy of the foregoing **NOTICE OF MOTION** and the **MOTION TO LIFT THE AUTOMATIC STAY TO CONDUCT PUBLIC SALE OF COLLATERAL SECURING BANK'S LOANS AND RELATED RELIEF** to be served upon the parties listed below through this Court's CM/ECF noticing system or as otherwise indicated below, as applicable.

                                                       /s/ Courtney E. Barr

| | |
|---|---|
| Thomas J. Angell<br>David Huffman-Gottschling<br>Jacobs, Burns, Orlove & Hernandez<br>122 S. Michigan Ave., Suite 1720<br>Chicago, Illinois 60603<br>Phone: (312) 327-4337<br>Fax: (312) 580-7175<br>Email: tangell@jbosh.com, davidhg@jbosh.com<br>*Counsel for Petitioning Creditors*<br><br>BY CM/ECF | Steve Wolfe<br>Office of the U.S. Trustee<br>219 S. Dearborn, Room 873<br>Chicago, Illinois 60604<br>Phone: (312) 886-5785<br>Fax: (312) 886-5794<br>Email: steve.g.wolfe@usdoj.gov<br>*U.S. Trustee*<br><br>BY CM/ECF |
| Michael K Desmond, Chapter 7 Trustee<br>Figliulo & Silverman P C<br>10 S. LaSalle Suite 3600<br>Chicago, IL 60603<br>Phone: (312) 251-5257<br>Fax: (312) 251-4610<br>Email: mdesmond@fslegal.com<br>*Chapter 7 Trustee*<br><br>BY MESSENGER | David A. Adelman<br>Adelman Law Offices, O.C.<br>1902 N. Roselle Road, Suite 800<br>Schaumburg, Illinois 60195<br>Phone: (847) 301-4341<br>Fax: (847) 301-4342<br>Email: adelman@pacaenforcer.com<br>*Counsel for PACA Creditor*<br><br>BY CM/ECF |
| Norman Light<br>300 N. State Street, Suite 2602<br>Chicago, IL 60610<br>Phone: (312) 464-9852<br>Fax: (312) 464-9857<br>Email: norm.light@sbcglobal.net<br>*Debtor's Registered Agent*<br><br><br><br>BY MESSENGER | Richard J. Firfer<br>John A. Benson, Jr.<br>Belongia, Shapiro & Franklin, LLP<br>20 S. Clark Street, Suite 300<br>Chicago, IL 60603<br>Phone: (312) 662-1030<br>Fax : (312) 662-1040<br>Email: jbenson@belongialaw.com<br>*Counsel for the Debtor*<br><br>BY CM/ECF |

| | |
|---|---|
| Gilbert B. Weisman<br>Becket & Lee, LLP<br>POB 3001<br>Malvern, PA 19355-0701<br>Phone: (610) 644-7800<br>Fax: (610) 993-8493<br>Email: notices@becket-lee.com<br>*Counsel for Creditor – American Express Bank FSB*<br><br>BY CM/ECF | Bruce E. de'Medici<br>834 Forest Avenue<br>Oak Park, IL 60302<br>Phone: (312) 731.6778<br>Email: bdemedici@gmail.com<br>*Counsel for the Assignee*<br><br>BY CM/ECF |
| Michael R. Collins<br>Collins & Collins<br>8 S Michigan Ave., Ste 1414<br>Chicago, IL 60603<br>Phone: (312) 201-8700 Ext. 18<br>Fax : (312) 606-0234<br>Email: michael.collins@collinsandcollins.com<br>*Counsel for Creditor - Dutch Farms*<br><br>BY CM/ECF | Kori M. Bazanos<br>Law Offices of Kori M. Bazanos<br>100 W. Monroe St., Ste. 2100<br>Chicago, IL 60603<br>Phone: (312) 578-0410<br>Email: kori@bazanoslaw.com<br>*Counsel for Creditor –Konematic, Inc. d/b/a Door Systems*<br><br>BY CM/ECF |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MOO & OINK, INC., | ) | Case No. 11-34616 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |
| | ) | Hearing Date: October 18, 2011 |
| | ) | Hearing Time: 10:30 a.m. |

**MOTION TO LIFT THE AUTOMATIC STAY TO CONDUCT PUBLIC SALE OF
COLLATERAL SECURING BANK'S LOANS AND RELATED RELIEF**

First Midwest Bancorp, Inc. (the "Bank"), by and through its counsel, hereby moves for entry of: (i) an interim order to be granted by the Court at the hearing scheduled for October 18, 2011, the proposed form of which is attached hereto as Exhibit A (the "Interim Order"), which sets certain notice procedures and modifies the stay for the limited purpose of permitting the Bank to proceed with advertising, marketing and noticing a public sale of the Collateral (as defined herein) under the Uniform Commercial Code (the "UCC"); and (ii) a final order, the proposed form of which is attached hereto as Exhibit B (the "Final Order"), which lifts the automatic stay to permit the Bank to sell at a public sale conducted pursuant to the UCC all of the Debtor's Collateral (as defined herein) and take all rights and actions that the Bank has with respect to the Collateral (the "Motion"). In support of the Motion, the Bank respectfully states as follows:

**I.
PRELIMINARY STATEMENT**

1. The Bank files this Motion to obtain an immediate modification of the automatic stay so that it may advertise, market and notice-up a public sale of the Collateral (as defined herein) to take place on November 10, 2011. Time is of the essence and it is imperative that the

1

Bank be permitted to exercise its rights and remedies as a secured creditor with respect to the defaulted Loans (as defined herein). Yet, the Bank recognizes that the Court, the chapter 7 trustee and the United States Trustee may have concerns over providing notice to creditors of the relief requested in this Motion when the Debtor has not filed its Schedules.[1] In order to ameliorate those concerns, but yet permit the Bank to quickly act to protect its rights in the Collateral, prevent further diminution in the value of the Collateral and stop additional costs to insure and protect the Collateral from continuing to accrue, the Bank requests that the Court enter the Interim Order at the hearing on October 18, 2011, which provides that:

    a)    the Bank shall serve a copy of the Motion, an amended notice of the Motion and the Interim Order upon the top twenty unsecured creditors of the Debtor by U.S. Mail on or before the date that is the later of, (i) October 24, 2011, or (ii) one business day after the Debtor files its list of the top twenty unsecured creditors, and such notice of the Motion and the Final Order shall be deemed adequate;

    b)    parties shall have until November 4, 2011 to file an objection to the relief requested in the Final Order;

    c)    a hearing on the entry of the Final Order shall take place on or before November 8, 2011; and

    d)    the stay shall be modified so that the Bank shall be permitted to advertise, market and notice-up the public sale of the Collateral pursuant to the terms of the UCC, which sale shall take place on November 10, 2011.

At the hearing on the Final Order, proposed to take place on or before November 8, 2011, the Bank shall seek to lift the automatic stay so that it may proceed with conducting and closing the public sale of the Collateral and take all actions against the Debtor to which it is entitled under its various loan documents.

---

[1] On October 12, 2011, the Debtor filed a motion seeking to extend its time to file its Schedules and Statement of Financial Affairs from October 14, 2011 to November 1, 2011. The Bank will not oppose the relief requested in that motion, provided that the Debtor files, at the very least, a list of its top twenty unsecured creditors on or before October 21, 2011, so that the Bank may follow the notice procedures relating to the Motion set forth herein.

2

2. The Bank submits that it is in the best interests of the Debtor, its creditors and the estate that the Court permit the sale of the Collateral as contemplated herein. The business enterprise known as "Moo & Oink" goes beyond just the Debtor and involves several related, non-debtor entities, which are co-borrowers with the Debtor under the Bank's Loans (as defined herein). In order to maximize the value of the Debtor's Collateral, it is advantageous to sell it, along with all of the collateral of the related non-debtor entities pledged to the Bank, in a sale to be conducted by the Bank under the UCC.

## II.
## CASE BACKGROUND AND JURISDICTION

3. On August 24, 2011 (the "Petition Date"), certain creditors of Moo & Oink, Inc. (the "Debtor") filed an involuntary petition (the "Petition") for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") against the Debtor in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"). On September 30, 2011, this Court entered an order of relief with respect to the Petition (the "Order for Relief").

4. On September 30, 2011, the United States Trustee's Office appointed Michael K. Desmond as the chapter 7 trustee of the Debtor (the "Trustee").

5. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue of this case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## FACTUAL BACKGROUND

6. Prior to the Petition Date, the Debtor entered into an assignment for the benefit of its creditors (the "ABC") under Illinois law. Steven A. Nerger (the "Assignee") was appointed the Assignee of the ABC, and was operating the Debtor's three grocery stores for the benefit of the Debtor's creditors as of the date of the Order for Relief. The three grocery stores are located

in the Chicagoland area and are commonly known as: the "Stony Island" store located at or about the 7100 block of S. Stony Island, Chicago, IL, the "Madison Street" store located at or about 4848 W. Madison St., Chicago, IL, and the "Racine" store located at or about 8201 S. Racine Ave., Chicago, IL (collectively, the "Stores"). Related, non-debtor entities own the real estate and the buildings where the Stores are located and may additionally have assets of their own located at the Stores.

7. On or about October 1, 2009, the Bank[2] entered into that certain Loan and Security Agreement (as amended and restated, the "Loan Agreement") with the Debtor, Home of Moo & Oink, LLC, Calumet Meat Company, Ms. Mollye's, Inc., Your Meat Store and More, LLC and BBHM Management Company as borrowers (collectively, the "Borrowers").[3] With the exception of the Debtor, none of the other Borrowers are a debtor under the Bankruptcy Code and shall be referred to herein as the "Non-Debtor Borrowers". Pursuant to the Loan Agreement, the Bank extended three loans (collectively, the "Loans") to the Borrowers. The Loans are evidenced by the following promissory notes that the Borrowers executed in favor of the Bank: (i) that certain Revolving Note, dated as of October 1, 2009, with a maximum principal amount of $2,000,000; (ii) that certain Term Note, dated as of October 1, 2009, with a maximum principal amount of $420,000; and (iii) that certain Real Estate Note, dated as of November 9, 2009, with a maximum principal amount of $4,264,815.81 (as amended, collectively, the "Notes"). True and correct copies of the latest amended Notes are attached hereto as Exhibit C. Each of the Borrowers is jointly and severally liable for all indebtedness relating to the Loans.

---

[2] The Loan Agreement was executed by First Midwest Bank, which is wholly-owned by the Bank. So as to avoid confusion, the "Bank" will also refer to First Midwest Bank.
[3] With respect to the Real Estate Note (as referenced below), additional borrowers under that note include certain land trustees that executed the Real Estate Note at the direction and on behalf of the Borrowers.

4

8. Further, the Bank issued that certain Irrevocable Letter of Credit No. 510024724-201 (as amended, the "LC"), dated as of November 9, 2009, on behalf of the Debtor for the benefit of a supplier of the Debtor, Supervalu Holdings Inc., in the amount of $350,000. The LC has not yet been drawn upon, but is set to expire on November 9, 2011, and thus represents a contingent claim held by the Bank against the Debtor. The LC was issued pursuant to, and if drawn would be debited against the balance that the Borrowers owe under, the Revolving Note. A true and correct copy of the LC is attached hereto as Exhibit D.

9. On July 5, 2011, the Borrowers were in default under the Loans and the parties agreed to modify the terms of the Loans pursuant to a Fourth Modification of Loan Documents (the "Loan Modification"). A true and correct copy of the Loan Modification is attached hereto as Exhibit E and represents the last modification made to the Loans. Pursuant to the Loan Modification, among other things, the maturity date associated with the Real Estate Note and the Revolving Note was extended to October 5, 2011. Accordingly, as of the date hereof, the Real Estate Note and the Revolving Note have matured and the Bank has not received payment on those notes.

10. As security for repayment of the Loans, among other security for the Loans, the Debtor, pursuant to the Loan Agreement and the Collateral Assignment of Trademarks dated as of October 1, 2009, granted to the Bank a security interest in substantially all of its assets, including without limitation, inventory, accounts, equipment, goods, fixtures, chattel paper, cash proceeds and trademarks (collectively, the "Collateral").[4] The Bank has a perfected security interest in the Collateral by filing a UCC-1 financing statement with the Illinois Secretary of

---

[4] A true and correct copy of the Collateral Assignment of Trademarks dated as of October 1, 2009 and executed by the Borrowers is attached hereto as Exhibit F.

5

State's office. A copy of the relevant UCC-1 financing statement relating to the Collateral is attached hereto as <u>Exhibit G</u>. The Loans are further secured by all of the assets of the Non-Debtor Borrowers, including but not limited to mortgages on each of the Stores and on another store owned by a Non-Debtor Borrower, and by unconditional guaranties executed by two individual owner-investors. A brief recitation of the agreements entered into with the Debtor, the Non-Debtor Borrowers and the guarantors is set forth in the Loan Modification.

11.   As of October 6, 2011, the Bank held a total claim against the Debtor of not less than $5,820,910.62, consisting of a liquidated claim arising under the Loans and a contingent claim of $350,000 arising under the LC. While the Debtor has not yet filed its Schedules, the Bank is familiar with the Debtor's assets and present cash condition and the value of the Collateral is significantly less than the amount due to it under the Loans.

## IV.
## RELIEF REQUESTED

12.   The Bank respectfully requests that this Court: (i) enter the Interim Order, which (a) establishes the notice procedures for providing notice to the Debtor's top twenty creditors and a deadline to object to the relief sought in the Final Order, and (b) modifies the automatic stay to permit the Bank to advertise, market and notice-up a public sale of the Collateral that will take place on November 10, 2011; and (ii) enter the Final Order, which (a) lifts the automatic stay with respect to the Collateral for "cause" pursuant to 11 U.S.C. §362(d)(1) in order to permit the Bank to exercise all of its rights and remedies with respect to the Collateral, including proceeding with the public sale of the Collateral on November 10, 2011, and/or (b) lifts the automatic stay with respect to the Collateral pursuant to 11 U.S.C. § 362(d)(2) in order to permit the Bank to exercise all of its rights and remedies with respect to the Collateral, including proceeding with the public sale of the Collateral on November 10, 2011, because the Debtor has

6

no equity in the Collateral and has no prospects for reorganization; and (iii) waive the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3) with respect to the Interim Order and the Final Order.

## V.
## BASIS FOR RELIEF REQUESTED

### A.    "Cause" Exists to Lift the Automatic Stay.

13.    The automatic stay set forth in section 362(a) of the Bankruptcy Code is not meant to be indefinite or absolute and this Court has the power to grant relief from the automatic stay in appropriate circumstances.  See In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing In re Wedgewood, 878 F.2d 693, 697 (3d Cir. 1989)).  Pursuant to section 362(d)(1) of the Bankruptcy Code, upon notice and a hearing, a court may lift the automatic stay for "cause."  11 U.S.C. § 362(d).  The decision of whether to lift the stay for cause under section 362(d) is committed to the sound discretion of the bankruptcy court and is reviewed only for an abuse of discretion.  In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995); In re American Classic Voyages, Co., 298 B.R. 222, 225 (D. Del. 2003).

14.    "Cause" is not defined under Section 362(d) of the Bankruptcy Code and is generally determined on a case-by-case basis after looking at the "totality of the circumstances." Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997); Rexene Products, 141 B.R. at 576 (citing In re Fernstrom Storage & Van Co., 938 F.2d 731, 735 (7th Cir. 1991)).  In determining whether cause exists, "the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." C & S Grain Co., 47 F.3d at 238; see also In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993) ("courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant").  A lack of adequate protection of the

7

secured creditor's interest constitutes "cause" for purposes of section 362(d). 11 U.S.C. §362(d)(1).

15.    Here, "cause" exists because the Bank is not receiving adequate protection of its interest in Collateral, as required by 11 U.S.C. §362(d)(1). It is well-established that when a secured creditor's collateral is declining in value, and the secured creditor is receiving no adequate protection, "cause" exists for lifting the automatic stay. In re 160 Bleecker St. Assocs., 156 B.R. 405, 414 (S.D.N.Y. 1993) (granting relief from stay when collateral was declining in value and secured creditor was receiving no adequate protection payments); In re Clarkeies Mkt., L.L.C., Case No. 01-10700, 2003 BNH 2, *29 (Bankr. D.N.H. January 22, 2003) (referring to court's decision to lift the stay to permit the secured creditor to operate the debtor's grocery stores because the lender's collateral consisted of perishable foodstuffs). Here, the Debtor is not making any payments to the Bank of any kind. Further, the Collateral consists of inventory, equipment, fixtures, and trademarks which are all necessarily declining in value. As the Bank is receiving no adequate protection for the decline in the value of its Collateral, pursuant to 11 U.S.C. § 362(d)(1), cause exists to lift the automatic stay with respect to the Collateral.

16.    Further, the Bank is undersecured, the Debtor has been in default under the Loans for several months, and the Real Estate Loan and the Revolving Loan have matured and have not been paid. Additionally, the Bank is incurring substantial expenses to preserve the Collateral, including out-of-pocket payments of $8,500/week to provide 24/7 security services at the Stores and, in the next week or so, the costs to continue insurance coverage over the Collateral will come due. All of the above facts result in a daily, substantial increase in the amount of the Bank's claim against the Debtor, while the value of the Collateral is declining. Under such circumstances, the Bank is not receiving adequate protection, warranting the lifting of the

8

automatic stay. In re Cadwell's Corners P'ship, 174 B.R. 744, 762 (Bankr. N.D. Ill. 1994) (lifting the automatic stay "[g]iven the fact that [the secured lender's] claim has exceeded the value of the [collateral] since 1993, that the debt continues to accrue late charges and interest payments, and that Debtor has made no payments to reduce this debt for over eight months, this Court finds that the [secured lender's] interest in the [collateral] is not adequately protected").

> **B. The Debtor Has No Equity in the Collateral and the Collateral is Not Necessary for an Effective Reorganization.**

17. The Bankruptcy Code permits the Court to grant relief from the automatic stay if "the debtor does not have an equity in such property and such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

18. Here, relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code is warranted. The Bank has worked with the Assignee within the context of the ABC and is undeniably familiar with cash forecasts, budgets and spreadsheets prepared by the Assignee that detail the Debtor's assets and cash situation. It is manifestly clear that the Collateral is worth significantly less that the Bank's claim against the Debtor. In re 666 Assocs. / Streeterville Utl. Co., 65 B.R. 819, 825 (N.D. Ill. 1986) (lifting the automatic stay in favor of secured creditor when the debtor had no equity in the secured creditor's collateral). The Debtor has no equity in the Collateral.

19. Further, the Collateral is not necessary to an effective reorganization because this is a chapter 7 liquidation case with no prospects for reorganization. In re Jankowski, No. 05-90879, 2008 Bankr. LEXIS 1040, at *2 (Bankr. C.D. Ill. Apr. 11, 2008) (lifting the automatic stay because "given that the Debtors have filed for Chapter 7 relief, the real estate is not necessary for a reorganization"); Miles v. Wells Fargo Bank, N.A., No. 09-02973, 2010 U.S. Dist. LEXIS 105095, at *9 (D. Colo. Sept. 30, 2010) (lifting automatic stay in chapter 7 proceeding because

9

"there was no longer a reorganization pending and the subject property was thus not necessary to an effective reorganization"). Therefore, this Court should lift the automatic stay to permit the Bank to exercise its remedies with respect to the Collateral pursuant to 11 U.S.C. § 362(d)(2).

## VI.
## WAIVER OF 14-DAY STAY UNDER FED. R. BANKR. P. 4001(a)(3)

20.     Further, the Bank requests that the Interim Order and the Final Order granting the respective relief requested in the Motion take immediate effect and that the fourteen-day stay provided under Bankruptcy Rule 4001(a)(3) be waived. Fed. R. Bankr. P. 4001(a)(3) ("An order granting a motion for relief from an automatic stay … is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*") (emphasis added).

21.     The Debtor has no income, the Bank is receiving no adequate protection, the value of the Collateral is diminishing with each day that passes and the Bank is absorbing the day-to-day costs of protecting and preserving the Collateral. In light of these economic reasons and the practical reality associated with this case, there is ample justification for a waiver of the stay imposed by Bankruptcy Rule 4001(a)(3) and the immediate granting of the relief sought herein.

## VII.
## NOTICE

22.     Notice of this Motion has been given to each of the following: (i) the Debtor through its registered agent; (ii) Debtor's counsel; (iii) the Trustee; (iv) the United States Trustee; (v) counsel for the Assignee; and (vi) all parties that have filed appearances in this case. Given the scope and nature of the relief requested in the Motion, the Bank submits that notice of the Motion and the notice procedures set forth in the Motion are adequate.

10

WHEREFORE, the Bank respectfully requests that the Court: (i) grant the Motion; (ii) enter the Interim Order at the hearing on October 18, 2011; (iii) enter the Final Order at a subsequent hearing on or before November 8, 2011; (iv) order that the relief granted in the Interim Order and the Final Order is not subject to the fourteen-day stay provided under Bankruptcy Rule 4001(a)(3); and (v) grant such other and further relief as may be necessary and appropriate.

Dated: October 13, 2011

Respectfully submitted,

FIRST MIDWEST BANCORP, INC.

    /s/ Courtney E. Barr
One of its Attorneys

Courtney E. Barr (ARDC #6277432)
Brian A. Raynor (ARDC #6300638)
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 443-0653
Fax: (312) 443-6653
cbarr@lockelord.com